RENDERED: JULY 24, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1514-ME

C.B.J.H. APPELLANT

APPEAL FROM SPENCER CIRCUIT COURT, FAMILY DIVISION
v. HONORABLE DEANA McDONALD, SPECIAL JUDGE
ACTION NO. 25-AD-00010

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; K.M.H., A
MINOR CHILD; AND S.N.C. APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, McNEILL, AND TAYLOR, JUDGES.

McNEILL, JUDGE: C.B.J.H. ("Father") appeals from the Spencer Circuit

Court's findings of fact, conclusions of law, and order terminating his parental

rights to his minor child, K.M.H. Upon careful review, we affirm.

**BACKGROUND**

On March 17, 2024, K.M.H. was born testing positive for amphetamines, methamphetamines, fentanyl, gabapentin, xylazine, and norfentanyl. At the time of K.M.H.'s birth, S.N.C. ("Mother") also tested positive for fentanyl, amphetamines, and marijuana. Father told a Cabinet for Health and Family Services ("the Cabinet") representative that he knew Mother was using drugs while pregnant and did not intervene. Father admitted a history of substance misuse and had pending criminal charges for theft by unlawful taking, fleeing or evading police, possession of burglary tools, criminal possession of a forged instrument, theft by deception, and possession of a stolen mail matter, of which he was subsequently convicted.

The Cabinet filed a Dependency, Neglect, or Abuse ("DNA") petition on April 3, 2024, and was granted emergency custody of K.M.H. the same day. Mother and Father were given a case plan designed to reunite the family with the following tasks: cooperate with the Cabinet and all other treatment providers, obtain and maintain stable housing and income, apprise the Cabinet within 48 hours of any address/phone changes, attend monthly home visits from the Cabinet, complete the protective parenting program, complete mental health and substance abuse evaluations and any recommended treatment, complete random drug screens, attend AA or NA meetings and obtain sponsors, refrain from criminal activity, follow all court orders, and attend all scheduled visits with K.M.H. Mother

subsequently stipulated to abuse or neglect based on her substance abuse and K.M.H. was committed to the Cabinet's custody.

On May 29, 2025, the Cabinet filed a petition to involuntarily terminate Mother and Father's rights to K.M.H. The petition alleged that K.M.H. is an abused and neglected child; that parents, for a period of not less than six (6) months, have continuously or repeatedly failed or refused to provide or have been substantially incapable of providing essential parental care and protection, considering the age of the child; that parents, for reasons other than poverty alone, have continuously or repeatedly failed to provide or are incapable of providing essential food, clothing, shelter, medical care or education reasonably necessary and available for the child's well-being and there is no reasonable expectation of significant improvements in the parents' conduct in the immediately foreseeable future, considering the age of the child; that K.M.H. has been in foster care under the responsibility of the Cabinet for fifteen (15) cumulative months out of forty-eight (48) months preceding the filing of the petition due to the parents' failure to make sufficient progress in their case plan to allow for the safe return of the child; that Father had abandoned K.M.H. for a period of not less than 90 days; and that termination of parental rights was in the child's best interest.

At the hearing on the petition, Maggie Wingo, the Cabinet-assigned social worker for the case, testified in support of the allegations. Because only

Father has appealed from the termination of parental rights, we include only the evidence relevant to that determination. Ms. Wingo testified that Father initially kept in contact with the Cabinet in May of 2024; however, he would often schedule an appointment and then fail to keep it. Contact with Father gradually decreased until Father was incarcerated in December 2024.

Ms. Wingo testified that in April 2024, Mother told a social worker that Father was using drugs. Just two days after K.M.H.'s removal, Father was arrested (and later convicted) for shoplifting. In the eight months from May 2024 until December 2024, Father failed to complete any of his case plan. Father did not visit the child at all during this period, despite being allowed weekly visitation. Not once during 2024 did he ask about the child or inquire about the child's needs, and he has not provided clothing or other essential items.

Father resumed contact with the Cabinet in June 2025 following his release from jail. Ms. Wingo testified that Father is currently staying at the Red Carpet Inn in Louisville and has not provided her with any plan for stable housing. Father claims he is working but has not provided any proof of employment. Further, Father has not completed drug screens, even after getting out of jail. He told her his work schedule would not allow it (he works from seven a.m. to seven p.m., Monday through Friday); however, he met with her on a weekday around two p.m.

Father has also not completed a mental health assessment, chemical dependency evaluation, or protective parenting classes. While Father presented a certificate of completion from the Isaiah House for intensive outpatient treatment, this is insufficient according to the Cabinet because it does not know what services were provided or his level of participation. Additionally, Father says he has attended some Narcotics Anonymous meetings; he has not provided signature sheets to verify.

Father has started exercising visitation with K.M.H. and has paid child support since being ordered to in June. He has a current arrearage of over $2,000. Ms. Wingo reported that K.M.H. is in a foster home and has been doing well. She is attached to her foster parent and calls her "mom." Her current placement is also a potential adoptive home. Ms. Wingo estimated that if Father began working his case plan at this time, the Cabinet would need to see regular progress for six months before allowing unsupervised visitation. At this point, she believes the Cabinet has offered Father all the services it can.

Father clarified that he had been in and out of jail even before December 2024 but did not provide exact dates. He also explained that he lost his apartment during this time, was living from couch to couch, and had no vehicle. Father testified that he was released from jail at the end of May 2025 and entered

the Men's Healing Place treatment center. He transferred to the Isaiah House on June 14 and completed the intensive outpatient program on August 2, 2025.

He has been drug-free for over six months and has no current pending charges but is on probation. He is currently required to do random drug testing through Probation and Parole and reports monthly. He further testified that he was required to drug screen while at the Isaiah House and never failed a test.

Father said he was currently employed by Communications Incorporated to run fiber optic cables. He is staying at the hotel to save money to secure stable housing and transportation. Father currently attends Alcoholics Anonymous meetings and has a sponsor, although he only goes when his work schedule allows. He did a mental health evaluation at Our Lady Peace in September 2025, although he acknowledged that he was ordered to complete a mental health evaluation through Seven Counties. Father has also completed an online parenting class because his work does not allow him to attend Seven Counties. He believed there was nothing keeping him from having his daughter right now.

Following the hearing, the circuit court entered findings of fact, conclusions of law, and an order terminating Father's rights to K.M.H. The court found that K.M.H. is an abused and neglected child as defined in KRS[1] 600.020;

_____

[1] Kentucky Revised Statutes.

that parents, for a period of not less than six (6) months, have continuously or repeatedly failed or refused to provide or have been substantially incapable of providing essential parental care and protection for the child and there is no reasonable expectation of improvement in parental care and protection, considering the child's age; that parents, for reasons other than poverty alone, have continuously or repeatedly failed to provide or are incapable of providing essential food, clothing, shelter, medical care or education reasonably necessary and available for the child's well being and there is no reasonable expectation of significant improvement in the parents' conduct in the immediately foreseeable future, considering the child's age; that Father has abandoned the child for a period of not less than ninety (90) days; and that termination of parental rights is in the best interest of the child. This appeal followed.

## STANDARD OF REVIEW

We begin by noting that "the trial court has wide discretion in terminating parental rights." *Cabinet for Health and Family Services v. K.H.*, 423 S.W.3d 204, 211 (Ky. 2014) (citation omitted). "Thus, our review is limited to a clearly erroneous standard which focuses on whether the [circuit] court's order of termination was based on clear and convincing evidence." *Id.* (citing Kentucky Rules of Civil Procedure ("CR") 52.01). "Pursuant to this standard, an appellate court is obligated to give a great deal of deference to the [circuit] court's findings

and should not interfere with those findings unless the record is devoid of substantial evidence to support them." *Commonwealth, Cabinet for Health and Family Services v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010) (citation omitted). "Because termination decisions are so factually sensitive, appellate courts are generally loath[] to reverse them, regardless of the outcome." *D.G.R. v. Commonwealth, Cabinet for Health and Family Services*, 364 S.W.3d 106, 113 (Ky. 2012). "Where the trial court's findings are not clearly erroneous, and they substantially support the TPR, we will affirm the order." *Cabinet for Health and Family Services v. H.L.O.*, 621 S.W.3d 452, 462 (Ky. 2021) (citation omitted).

## ANALYSIS

"It is a fundamental right of every parent to raise his or her own child." *H.L.O.*, 621 S.W.3d at 462 (citation omitted). "KRS 625.090 sets forth all the requirements which must be met before a court in Kentucky can involuntarily terminate a parent's rights to his or her child." *Id.* As explained in *Cabinet for Health and Family Services v. K.H.*, 423 S.W.3d 204 (Ky. 2014):

> KRS 625.090 provides for a tripartite test which allows for parental rights to be involuntarily terminated only upon a finding, based on clear and convincing evidence, that the following three prongs are satisfied: (1) the child is found or has been adjudged to be an abused or neglected child as defined in KRS 600.020(1); (2) termination of the parent's rights is in the child's best interests; and (3) at least one of the termination grounds enumerated in KRS 625.090(2)(a)-(j) exists.

*Id.* at 209.

**Abuse or Neglect (KRS 625.090(1))**

Father argues the circuit court failed to specifically address KRS 625.090(1)(a) in its findings, failed to make a separate finding of abuse or neglect as to him, and its finding of abuse or neglect was not supported by substantial evidence. We find no error.

Father faults the circuit court for not specifically analyzing KRS 625.090(1) in its "findings of fact" section, despite the court making the necessary finding that K.M.H. is an abused and neglected child in its "conclusions of law." While the court did not mention KRS 625.090(1) by name in its findings of fact, it is clear the court properly considered whether K.M.H. was an abused or neglected child as defined by statute and made the required determination. KRS 625.090(1) requires the court to find that the child is, or has been adjudged to be, an "abused or neglected child, as defined in KRS 600.020(1)[.]" In discussing KRS 625.090(3)'s best interest factors, specifically KRS 625.090(3)(b), "Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family[,]" the court found that K.M.H. was abused or neglected within the meaning of KRS 600.020(1). Thus, the court made the required decision based upon the necessary considerations, albeit in the context of KRS 625.090(3)'s best interest factors.

Further, the circuit court made an independent finding of abuse or neglect as to Father. The circuit court's conclusions of law state that K.M.H. "is found in this proceeding to be abused or neglected, by *each respondent parent*, as defined in KRS 600.020(1)[.]" (Emphasis added.) Specifically, the court found that K.M.H. was abused or neglected based on the "child being subjected to substance abuse by *her parents*, to neglect of her material, emotional, and healthcare needs, and to having been abandoned by *her father* for a period of not less than ninety (90) days." (Emphasis added.) The court also found that K.M.H. was abused or neglected

> by the *Respondent parents'* failure or inability to comply with this Court's remedial orders and the Cabinet's court-approved treatment plan so that the Petitioner child could be safely returned to parental custody and by the failure or inability of the *Respondent parents* to do what is necessary to materially support the child.

(Emphasis added).

While Father takes issue with the court's "repeatedly refer[ing] to the natural mother and father in a collective manner[,]" he cites no case law disapproving of this practice. In fact, in *Cabinet for Health and Family Services v. K.H.*, 423 S.W.3d 204 (Ky. 2014), the case cited by Father in support of his argument, the Kentucky Supreme Court held a trial court's finding that two statutory qualifying events, as listed in KRS 600.020(1), existed as to "*both*

-10-

parents," was sufficient to satisfy the requirement of an individualized finding of abuse or neglect as to the father. *See id.* at 212-13.

Finally, the court's finding that Father abused or neglected K.M.H. was supported by substantial evidence. Here, the circuit court found that several conditions under KRS 600.020(1) existed with respect to K.M.H. First, the circuit court found that K.M.H. had been subjected to substance abuse by both parents. Father acknowledged to the Cabinet that he knew Mother was using drugs during pregnancy and yet did nothing. Father's own testimony confirmed this. "As stated in KRS 600.020(1)(a)2., a court can find neglect if an individual 'creates or allows to be created a risk of physical or emotional injury as defined in this section to the child by other than accidental means.'" *Cabinet for Health and Family Services on behalf of C.R. v. C.B.*, 556 S.W.3d 568, 576 (Ky. 2018). Father's failure to intervene certainly qualifies as allowing a risk of physical or emotional harm to K.M.H. to be created by other than accidental means. KRS 600.020(1)(a)2.

The circuit court also found that Father "abandon[ed] . . . the child[.]" KRS 600.020(1)(a)7. "Generally, abandonment is demonstrated by facts or circumstances that evince a settled purpose to forego all parental duties and relinquish all parental claims to the child." *O.S. v. C.F.*, 655 S.W.2d 32, 34 (Ky. App. 1983) (citation omitted). "Furthermore, while [i]ncarceration alone can never be construed as abandonment as a matter of law[,] . . . absence, voluntary or court-

imposed, may be a factor to consider in determining whether the children have been neglected." *M.S.S. v. J.E.B.*, 638 S.W.3d 354, 366 (Ky. 2022) (internal quotation marks and citation omitted). Here, during the eight months prior to his incarceration (May 2024-December 2024), Father did not visit K.M.H. once, despite being allowed weekly visitation. He did not write letters or call on the phone. Ms. Wingo testified that Father did not ask about the child or inquire about her needs at all during the year 2024, nor did he provide clothing or other essential items. The circuit court's finding of abandonment was not clearly erroneous.

Additionally, the circuit court found that K.M.H. was "further abused or neglected by the Respondent parents' failure or inability to comply with this Court's remedial orders and the Cabinet's court-approved case treatment plan so that the Petitioner child could be safely returned to parental custody[.]" KRS 600.020(1)(a)9. states that a child is abused or neglected when a parent "[f]ails to make sufficient progress toward identified goals as set forth in the court-approved case plan to allow for the safe return of the child to the parent that results in the child remaining committed to the cabinet and remaining in foster care for fifteen (15) cumulative months out of forty-eight (48) months[.]"

Here, K.M.H. had been in foster care for eighteen months. Ms. Wingo testified that from the Cabinet's perspective, Father had not completed any of his case plan. He has not completed any drug screen; he has no plans for stable

housing; he has not verified his employment; he has not provided proof that he has completed a chemical dependency evaluation, mental health assessment, protective parenting classes, or that he has been attending NA meetings. While Father would dispute this appraisal of his efforts, "the [circuit] court is in the best position to evaluate the testimony and to weigh the evidence[.]" *B.C. v. B.T.*, 182 S.W.3d 213, 219 (Ky. App. 2005). The circuit court did not abuse its discretion in holding that the first prong of KRS 625.090 was met.

**Parental Unfitness (KRS 625.090(2))**

Father next argues that the court failed to make a particularized finding of abandonment under KRS 625.090(2)(a) and that the finding of abandonment was not supported by substantial evidence. We disagree. The court did not simply "parrot" the statutory language, as argued by Father. While it is true that the court did not set forth the specific evidence upon which it relied in the same paragraph where it made its finding of abandonment, this evidence was outlined in detail elsewhere in the court's findings of fact. Accordingly, we find this argument without merit.

The court's finding of abandonment was also supported by substantial evidence, as discussed above. Only one ground of parental unfitness must be found to exist before a court can involuntarily terminate parental rights. KRS 625.090(2). While Father also challenges the court's findings under KRS

625.090(2)(e) and (g), we need not address these other grounds since only one ground is required to support termination.

**Best Interest of the Child (KRS 625.090(3))**

Lastly, Father argues that the circuit court erred in finding that the Cabinet had made reasonable efforts to unite K.M.H. with her parents. KRS 625.090(3)(c) requires the court to consider "whether the cabinet has, prior to the filing of the petition . . . made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents[.]" The court found that the Cabinet had made "appropriate referrals to substance abuse counseling, parenting classes, random drug screens, supervised visitation sessions, mental health counseling, and various other services." It further agreed with the Cabinet's assessment that it had provided all "services which the Cabinet could provide or refer the Respondent parents to [sic] that would allow for the safe reunification of the Respondent parents with the Petitioner child within a reasonable period, considering the age of the child." This finding was supported by substantial evidence.

"Reasonable efforts" are defined by KRS 620.020(13) as "the exercise of ordinary diligence and care by the department to utilize all preventive and reunification services available . . . which are necessary to enable the child to safely live at home[.]" Here, there was ample evidence that the Cabinet offered a multitude of services in an attempt to reunite Father with the child. Father was

-14-

offered a case plan within a week of K.M.H.'s removal, which was updated every six months. Ms. Wingo was Father's case worker from the beginning and testified in detail about the services provided. She opined that if Father began working his case plan that day, it would take at least six months before he could receive unsupervised visitation with K.M.H. Meanwhile, K.M.H. has been in the Cabinet's custody for eighteen months, has been with the same foster parent (who is a potential adoptive parent), is doing well, and is bonded with them. At this point, Ms. Wingo believed the Cabinet had offered all services it could.

While Father argues that the Cabinet "prematurely terminated reasonable efforts" to reunite him with his daughter and that since getting out of jail in June 2025 he has begun working his case plan, he overlooks the eight months prior to his incarceration where he did nothing towards reunification. And while he claims he is working on his case plan, Ms. Wingo testified that, from Cabinet's perspective, Father has not successfully completed any aspect of his case plan because he has not provided adequate verification. While Father is to be commended for his efforts, we cannot say the circuit court abused its discretion in finding that termination of parental rights was in the child's best interest. *See C.J.M. v. Cabinet for Health and Family Services*, 389 S.W.3d 155, 160 (Ky. App. 2012) (citation omitted) ("A court has broad discretion to determine whether a

child has been either abused or neglected and whether the best interests of the child warrant a termination of parental rights.").

## CONCLUSION

Based on the foregoing, the Spencer Circuit Court's findings of fact, conclusions of law, and order terminating Father's parental rights to K.M.H. is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Paul A. Zimlich
Taylorsville, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES:

Kevin Martz
Covington, Kentucky